IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BLAIR-NAUGHTON, L.L.C., d/b/a
GOODLAND STEAKHOUSE DINER,

        Plaintiff,

vs.                               Case No. 06-1183-JTM

DINER CONCEPTS, INC., A Georgia
Corporation and DAVID H. BERNSTEIN,

        Defendants.

MEMORANDUM AND ORDER

Plaintiff Blair-Naughton, L.L.C, doing business as Goodland Steakhouse Diner, commenced the present action in Kansas state court against defendants Diner Concepts, Inc., a Georgia corporation, and its owner and CEO, David Bernstein, alleging that Blair-Naughton had breached a March 21, 2005 contract under which the defendants were to provide a modular diner for its site in Goodland, Kansas. Blair-Naughton contends that the building delivered was built to specifications which it did not approve, and was poorly built and failed to meet building codes. Blair-Naughton brought claims for fraud, breach of the contract, and breach of express warranty that the diner would be in "strict conformity" with approved plans and would be free from defect.

The defendants removed the action to this court, and then moved to dismiss the action for lack of subject matter jurisdiction, for abstention, or to have the case transferred to Georgia. The

court denied this motion on November 17, 2006. (Dkt. No. 17). The defendants then filed their Answer, including a Counterclaim against Blair-Naughton.

Diner Concepts and Bernstein contend that the delays in delivering the diner were caused by Blair-Naughton, and counterclaimed for the purchase price and interest, as well as for damages, as stipulated in the Sales Contract, for the time required to store the diner prior to delivery. The defendants also sought recovery against Blair-Naughton for defamation, for infringement with business relations (alleging that Blair-Naughton had encouraged the defendants' subcontractors to pursue them for expenses which were the responsibility of Blair-Naughton). In addition, Diner Concepts advanced a Third-Party Complaint against its supplier, Wilkins Mobile Builders, an Alabama corporation which makes modular building units. Diner Concepts alleges that if there are any defects in the Goodland diner, they were caused by Wilkins' breach of its contract with Diner Concepts. Diner Concepts also advanced a fraud claim against Wilkins.

The matter is now before the court on two motions. First, Blair-Naughton has moved to dismiss Diner Concepts and to sever the third-party action. A third motion, in which defendants seek dismissal of the fraud claim against Bernstein, has yet to be fully briefed.

In the other motion before the court, Wilkins Mobile has moved to dismiss the third-party claim, arguing that its contract was not with Diner Concepts, but with another of Bernstein's companies, Dinermite Diners, Inc. Accordingly, it argues, it cannot be held liable for breach of contract to Diner Concepts for breach of contract when it never contracted with that corporation. It also seeks to dismiss the fraud claim under Fed.R.Civ.Pr. 9(b), for failing to state its fraud claim with particularity. "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who,

what, when, where and how' of the alleged fraud." *United States ex rel. Smith v. Boeing Co.*, No. 05-1073-WEB, 2007 WL 1650924, at *6 (D. Kan. June 5, 2007).

It is uncontroverted that Diner Concepts and Dinermite Diners, Inc. are separate Georgia corporations. Diner Concepts was formed on December 31, 1995; Dinermite Diners was formed on December 2, 1997. David H. Bernstein is the CEO and founder of both corporations. However, the companies observe corporate formalities, including filing reports with the Georgia Secretary of State and keeping minutes, have separate bank and checking accounts, and have different business purposes and sell different products. Diner Concepts sells inexpensive modular diners; Dinermite Diners sells upgraded, high-end modular diners.

The defendants oppose Wilkins' motion by contending that the breach of contract is valid, not because it directly contracted with Wilkins, but because it has been assigned the contract rights by its sister corporation Dinermite Diners. Further, by means of an affidavit by Bernstein, it contends that at the time of the contract, Wilkins knew that the building being purchased was intended for use by Diner Concepts. Further, according to the affidavit by Bernstein, Dinermite Diners assigned its breach of contract and breach of warranty claims to Diner Concepts on July 23, 2007. Thus, Diner Concepts argues that its action against Wilkins is proper on two grounds. First, Georgia law provides for the assignment of claims for breach of contract and warranty. *Irvin v. Lowe's of Gainesville, Inc.*, 165 Ga.App. 828, 302 S.E.2d 734 (Ga. App. 1983). Further, Dinermite Diners was acting as its disclosed agent in purchasing the Wilkins building, and accordingly an action by the principal is proper under Georgia law even without direct privity of contract. *Id*. at 763.

In reply, Wilkins stresses that its contract with Dinermite nowhere mentions Diner Concepts, and that "Bernstein's self-serving affidavit is insufficient to controvert the fact that Wilkins built the building for Dinermite Diners." Wilkins cites Judge Lungstrum's rejection of a plaintiff's affidavit, on the issue of whether he was an at-will employee or protected by an implied contract in *Zwygart v. Board of County Com'rs of Jefferson County*, 412 F.Supp.2d 1193, 1200 (D. Kan. 2006):

> As a result, then, Mr. Zwygart's own affidavit is the only evidence that comes close to supporting his allegation of an implied-in-fact contract, but as the County argues, this affidavit is an ad hoc tactical statement made in anticipation of litigation. It holds no legal significance because a "conclusory and self-serving" affidavit is "not sufficient" to withstand summary judgment. *Salguero v. City Of Clovis*, 366 F.3d 1168, 1177 (10th Cir.2004).

The court finds that the defendants have no standing here because the purported assignment occurred after Diner Concepts initiated its claims against Wilkins and after Wilkins moved to dismiss those claims. The assignment occurred only two days prior to Diner Concepts' response to the motion to dismiss.

Standing is determined at the time an action is commenced. *See Minneapolis & St. L. R.R. Co. v. Peoria & Pekin Union Ry. Co.*, 270 U.S. 580, 586 (1926). Accordingly, the courts have rejected retroactive attempts to create standing by use of eleventh-hour assignments. *Merial Ltd. v. Intervet Inc.*, 430 F. Supp. 2d 1357, 1361 (N.D. Ga. 2006). The defendants' reliance on *Irvin v. Lowe's* is inapposite because the assignment in that action occurred prior to the litigation.

Similarly, the court finds that the theory of agency cannot preserve the defendants' claims, since Georgia law, Ga. Code Ann. 10-6-2, requires that, for any agency to exercise powers which would otherwise be required to be documented in writing, the agency itself must be so documented. Here the construction of the modular diner would fall within Georgia's statute of frauds as a sale of

goods valued at more than $500. Ga. Code Ann 11-2-201. *See Dunn v. Venture Bldg. Group*, 283 Ga. App. 500, 642 S.E.2d 156, 159 (2007). Since the defendants have failed to provide any evidence of such a written basis for the claim of agency, the court will grant summary judgment as to the contract and warranty claims against Wilkins.

Finally, the court notes that defendants' response makes no attempt to defend Diner Concepts' fraud claim. Accordingly, the court deems this argument abandoned.

The plaintiff's motion to dismiss Diner Concepts is granted as an unopposed motion. The request to sever the third-party action is denied as moot, as the court by this order grants summary judgment on the claims in the third-party action.

IT IS ACCORDINGLY ORDERED this 17th day of December, 2007, that the plaintiff's Motion to Dismiss and Sever (Dkt. No. 62) is granted in part and denied in part as provided herein; the third-party defendant's Motion for Summary Judgment (Dkt. No. 51) is granted.

        s/ J. Thomas Marten
        J. THOMAS MARTEN, JUDGE